Jonathan Shub
Kevin Laukaitis*
**SHUB LAW FIRM LLC**
134 Kings Highway E., 2nd Floor
Haddonfield, NJ 08033
Tel: (856) 772-7200
Fax: (856) 210-9088
jshub@shublawyers.com
klaukaitis@shublawyers.com

*Attorneys for Plaintiffs and the Proposed Classes*
[Additional Counsel on Signature Page]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MELANIE SHEPARD, CIARA VARGAS, TISHA VALDEZ, and GWYNDALINE QUARLES, *individually and on behalf of all others similarly situated*, <br><br> Plaintiffs, <br><br> v. <br><br> GERBER PRODUCTS COMPANY (d/b/a Nestlé Nutrition, Nestlé Infant Nutrition, or Nestlé Nutrition North America), <br><br> Defendant. | CASE NO.: <br><br> **CLASS ACTION COMPLAINT** <br><br> JURY TRIAL DEMANDED |

**CLASS ACTION COMPLAINT**

Plaintiffs MELANIE SHEPARD, CIARA VARGAS, TISHA VALDEZ and GWYNDALINE QUARLES, on behalf of themselves and all others similarly situated, by their undersigned attorneys, against Defendant, GERBER PRODUCTS COMPANY (d/b/a Nestlé Nutrition, Nestlé Infant Nutrition, or Nestlé Nutrition North America) (hereafter "Gerber"), allege the following based upon personal knowledge as to themselves and their own action, and, as to all other matters, allege, upon information and belief and investigation of their counsel, as follows:

**INTRODUCTION**

1. This is a consumer class action brought individually by Plaintiffs and on behalf of all persons in the below-defined proposed Classes, all of whom purchased one or more baby foods manufactured by Gerber.[1]

2. Gerber claims to be "the world's most trusted name in baby food." http://www.gerber.com/nestle_nutrition/default.aspx. Gerber offers more than 190 products in 80 countries, with labeling in 16 languages. Defendant purchased the Gerber brand in 2007 for $5.5 billion in cash. Gerber reportedly controls between 70 and 80 percent of the baby food market in the United States.

3. Gerber does not list heavy metals as an ingredient on the Products' label nor does it warn of the potential presence of heavy metals in the Products.

4. Unbeknown to Plaintiffs and members of the proposed Classes, and contrary to the representations on the Products' label, the Products contain heavy metals, including arsenic, cadmium, and lead at levels above what is considered safe for babies, which, if disclosed to Plaintiffs and members of the proposed Classes prior to purchase, would have caused Plaintiffs and members of the proposed Classes not to purchase or consume the Products.

5. As a result, the Products' labeling is deceptive and misleading.

---

[1] The purchased products are: Gerber Toddler Mashed Potatoes & Gravy with Roasted Chicken Meal, Gerber Toddler Pick-ups Chicken & Carrot Ravioli Meal, Gerber Toddler Spaghetti Rings in Meat Sauce Meal, Gerber Toddler Spiral Pasta in Turkey, Meat Sauce Meal, Gerber Toddler Pick-ups Chicken & Carrot Ravioli Meal, Gerber Toddler Spaghetti Rings in Meat Sauce Meal, Gerber Sitter 2nd Foods Turkey Rice Dinner Plastic Tub, Gerber Sitter 2nd Foods Vegetable Beef Dinner Plastic Tub, Gerber Toddler Pick-ups Chicken & Carrot Ravioli Meal, Gerber Sitter 2nd Foods Apple Chicken Dinner Plastic Tub, Gerber Sitter 2nd Foods Vegetable Beef Dinner Plastic Tub, Gerber Toddler Mashed Potatoes & Gravy with Roasted Chicken Meal, Gerber Toddler Pick-ups Chicken & Carrot Ravioli Meal, Gerber Toddler Spaghetti Rings in Meat Sauce Meal, Gerber Toddler Spiral Pasta in Turkey Meat Sauce Meal, and Gerber Sitter 2nd Foods Turkey Rice Dinner Plastic Tub (the "Products").

6. Plaintiffs and the members of the proposed Classes, as defined below, thus bring claims for consumer fraud and seek damages, injunctive and declaratory relief, interest, costs, and attorneys' fees.

## THE PARTIES

7. Plaintiff MELANIE SHEPARD is a citizen of the State of Connecticut and is a member of the proposed class defined herein. She purchased the Products, including Gerber Toddler Mashed Potatoes & Gravy with Roasted Chicken Meal, Gerber Toddler Pick-ups Chicken & Carrot Ravioli Meal, Gerber Toddler Spaghetti Rings in Meat Sauce Meal, and Gerber Toddler Spiral Pasta in Turkey Meat Sauce Meal.

8. Plaintiff CIARA VARGAS is a citizen of the State of Connecticut and is a member of the proposed class defined herein. She purchased the Products, including Gerber Toddler Pick-ups Chicken & Carrot Ravioli Meal and Gerber Toddler Spaghetti Rings in Meat Sauce Meal.

9. Plaintiff TISHA VALDEZ is a citizen of the State of Colorado and is a member of the proposed class defined herein. She purchased the Products, including Gerber Sitter 2nd Foods Turkey Rice Dinner Plastic Tub, Gerber Sitter 2nd Foods Vegetable Beef Dinner Plastic Tub, and Gerber Toddler Pick-ups Chicken & Carrot Ravioli Meal.

10. Plaintiff GWYNDALINE QUARLES is a citizen of the State of Texas and is a member of the proposed class defined herein. She purchased the Products, including Gerber Sitter 2nd Foods Apple Chicken Dinner Plastic Tub, Gerber Sitter 2nd Foods Vegetable Beef Dinner Plastic Tub, Gerber Toddler Mashed Potatoes & Gravy with Roasted Chicken Meal, Gerber Toddler Pick-ups Chicken & Carrot Ravioli Meal, Gerber Toddler Spaghetti Rings in Meat Sauce Meal, and Gerber Toddler Spiral Pasta in Turkey Meat Sauce Meal.

11. Defendant Gerber Products Company, also doing business as Nestlé Nutrition, Nestlé Infant Nutrition, or Nestlé Nutrition North America, is a Michigan corporation with its headquarters located in Florham Park, New Jersey.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005 (hereinafter referred to as "CAFA") codified as 28 U.S.C. § 1332(d)(2) because the claims of the proposed Class Members exceed $5,000,000 and because Defendant is a citizen of a different state than most proposed Class Members.

13. This Court has personal jurisdiction over Defendant because Defendant regularly sells and markets products, and conducts business in this District and/or under the stream of commerce doctrine by allowing products to be sold in this District, including the Products.

14. Venue is proper in this Court because a substantial portion of the events complained of herein took place in this District, and this Court has jurisdiction over the Defendant. Furthermore, Defendant is headquartered in this District.

## FACTUAL ALLEGATIONS

15. Defendant manufactures, distributes, promotes, offers for sale, and sells the Products, both in the past and currently. Defendant has advertised and continues to advertise the Products through television commercials, print advertisements, point-of-sale displays, product packaging, Internet advertisements, and other promotional materials.

16. An investigation by the U.S. House of Representatives Subcommittee on Economic and Consumer Policy revealed that baby foods manufactured by Gerber are "tainted with significant levels of toxic heavy metals, including arsenic, lead, cadmium, and mercury." [2]

---

[2] U.S. House of Representatives Subcommittee on Economic and Consumer Policy, Staff Report, "Baby Foods are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium and Mercury (Feb. 4, 2021).

4

17. Exposure to heavy metals causes permanent decreases in IQ, diminished future economic productivity, and increased risk of future criminal and antisocial behavior in children. Toxic heavy metals endanger infant neurological development and long-term brain function. Lead and arsenic are heavy metals known to cause a wide spectrum of adverse outcomes in pregnancy such as abortions, retarded growth at the intrauterine cavity, skeletal deformities, malformations and retarded development especially of the nervous system.

18. Specifically, the Subcommittee found that:

    a. Gerber used high arsenic ingredients, using 67 batches of rice flour that had tested over 90 ppb inorganic arsenic;

    b. Gerber used an ingredient, conventional sweet potatoes, with 48 ppb lead. Gerber also used twelve other batches of sweet potato that tested over 20 ppb for lead, the EU's lenient upper standard. The results for its sweet potatoes and juices demonstrated its willingness to use ingredients that contained dangerous lead levels;

    c. Gerber does not test all of its ingredients for cadmium. Of those it does test, it accepts ingredients with high levels of cadmium. Gerber used multiple batches of carrots containing as much as 87 ppb cadmium, and 75% of the carrots Gerber used had more than 5 ppb cadmium— the EPA's drinking water standard;

    d. Gerber rarely tests for mercury in its baby foods.

    e. Gerber's policy is to test only ingredients, and not its final product(s) According to the Subcommittee, that policy "recklessly endangers babies and children and prevents the companies from ever knowing the full extent

of the danger presented by their products." Finished baby foods have more toxic ingredients than their ingredients alone. This means that only testing ingredients gives the false appearance of lower-than-actual toxic heavy metal levels.

19. These results are multiples higher than allowed under existing regulations for other products. For example, the Food and Drug Administration has set the maximum allowable levels in bottled water at 10 ppb inorganic arsenic, 5 ppb lead, and 5 ppb cadmium, and the Environmental Protection Agency has capped the allowable level of mercury in drinking water at 2 ppb. The test results of baby foods and the ingredients therein eclipse those levels: including results up to 91 times the arsenic level, up to 177 times the lead level, up to 69 times the cadmium level, and up to 5 times the mercury level.

20. Young children are particularly vulnerable to lead because the physical and behavioral effects of lead occur at lower exposure levels in children than in adults. A dose of lead that would have little effect on an adult can have a significant effect on a child. In children, low levels of exposure have been linked to damage to the central and peripheral nervous system, learning disabilities, shorter stature, impaired hearing, and impaired formation and function of blood cells.[3]

21. EPA has set the maximum contaminant level goal for lead in drinking water at zero because lead is a toxic metal that can be harmful to human health even at low exposure levels. Lead is persistent, and it can bioaccumulate in the body over time.[4]

---

[3] *See* https://www.cdc.gov/nceh/lead/prevention/pregnant.htm.
[4] *See* https://www.epa.gov/ground-water-and-drinking-water/basic-information-about-lead-drinking-water.

22. The Agency for Toxic Substances and Disease Registry states that there may be no threshold for lead with regards to developmental impact on children. "In other words there are no safe limits for Pb." [5]

## CLASS ACTION ALLEGATIONS

23. Plaintiffs bring this action individually and on behalf of all other persons similarly situated pursuant to Federal Rule of Civil Procedure 23. The class definition(s) may depend on the information obtained throughout discovery. Notwithstanding, at this time, Plaintiffs bring this action and seek certification of the following proposed Class: All persons within the United States who purchased and consumed the Products from the beginning of any applicable limitations period through the date of class certification (the "National Class" or the "Class").

24. Plaintiff Melanie Shepard (the "Connecticut Plaintiff") also seeks certification of the following subclass (the "Connecticut Sub-Class"): All persons in the State of Connecticut who purchased and consumed the Products from the beginning of any applicable limitations period through the date of class certification.

25. Plaintiff Ciara Vargas (the "Arizona Plaintiff") also seeks certification of the following subclass (the "Arizona Sub-Class"): All persons in the State of Arizona who purchased and consumed the Products from the beginning of any applicable limitations period through the date of class certification.

26. Plaintiff Tisha Valdez (the "Colorado Plaintiff) also seeks certification of the following subclass (the "Colorado Sub-Class"): All persons in the State of Colorado who purchased and consumed the Products from the beginning of any applicable limitations period through the date of class certification.

---

[5] G. Schwalfenberg, I. Rodushkinb, S.J. Genuis, "Heavy metal contamination of prenatal vitamins," Toxicology Reports 5 at 392 (2018).

7

27. Plaintiff Gwyndaline Quarles (the "Texas Plaintiff) also seeks certification of the following subclass (the "Texas Sub-Class"): All persons in the State of Texas who purchased and consumed the Products from the beginning of any applicable limitations period through the date of class certification.

28. Excluded from the proposed Classes are the Defendant, and any entities in which the Defendants have controlling interest, the Defendant's agents, employees and their legal representatives, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, and Plaintiffs' counsel, their staff members, and their immediate family.

29. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

30. **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Classes number in the thousands to tens of thousands. The number of members in the Classes is presently unknown to Plaintiffs but may be verified by Defendant's records. Members of the Classes may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

31. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all members of the Classes and predominate over questions affecting only individual members of the Classes. Such common questions of law or fact include, but are not limited to, the following:

    a. Whether the Products contain dangerous levels of heavy metals;

    b. Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive;

    c. Whether Defendant's actions violate the state consumer fraud statutes invoked below;

    d. Whether Defendant's actions constitute common law fraud;

    e. Whether Plaintiffs and Members of the Classes were damaged by Defendant's conduct;

    f. Whether Defendant was unjustly enriched at the expense of Plaintiffs and Class Members; and

    g. Whether Plaintiffs and Class Members are entitled to injunctive relief.

32. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** The claims of the named Plaintiffs are typical of the claims of other Members of the Classes. All Members of the Classes were comparably injured by Defendant's conduct described above, and there are no defenses available to Defendant that are unique to Plaintiffs or any particular Class members.

33. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of other Class Members; they have retained class counsel competent to prosecute class actions and financially able to represent the Classes.

34. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and the other Class Members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class Members as a whole. In particular, Plaintiffs seek to certify a Class to enjoin Defendants from selling or otherwise distributing baby foods until such

time that Defendants can demonstrate to the Court's satisfaction that its baby foods are accurately labeled.

35. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other means of adjudication for this controversy. It would be impracticable for Members of the Classes to individually litigate their own claims against Defendant because the damages suffered by Plaintiffs and the Members of the Classes are relatively small compared to the cost of individually litigating their claims. Individual litigation would create the potential for inconsistent judgments and delay and expenses to the court system. A class action provides an efficient means for adjudication with fewer management difficulties and comprehensive supervision by a single court.

## CAUSES OF ACTION

## COUNT I

### VIOLATIONS OF CONNECTICUT TRADE PRACTICES ACT, Conn. Gen. Stat. §§ 42-110g, *et seq*.
**(On behalf of the Connecticut Class)**

36. The Connecticut Plaintiffs identified above, individually and on behalf of the Connecticut Class, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

37. Defendant is a "person" as defined by Conn. Gen. Stat. § 42-110a(3).

38. Defendant is engaged in "trade" or "commerce" as those terms are defined by Conn. Gen. Stat. § 42-110a(4).

39. At the time of filing this Complaint, Plaintiffs have sent notice to the Attorney General and Commissioner of Consumer Protection pursuant to Conn. Gen. Stat. § 42-110g(c). Plaintiffs will provide a file-stamped copy of the Complaint to the Attorney General and Commissioner of Consumer Protection.

40. Defendant advertised, offered, or sold goods or services in Connecticut, and engaged in trade or commerce directly or indirectly affecting the people of Connecticut.

41. Defendant engaged in deceptive acts and practices and unfair acts and practices in the conduct of trade or commerce, in violation of the Conn. Gen. Stat. § 42-110b, by making misrepresentations and false statements concerning the Products.

42. As a direct and proximate result of Defendant's deceptive acts and practices, the Connecticut Plaintiffs and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, inclusive of not receiving the benefit of their bargain in purchasing the Products.

43. Defendant's deceptive acts and practices caused substantial, ascertainable injury to the Connecticut Plaintiffs and Class members, which they could not reasonably avoid, and which outweighed any benefits to consumers or to competition.

44. Defendant's violations of Connecticut law were done with reckless indifference to the Connecticut Plaintiffs and Class members, or was with an intentional or wanton violation of those rights.

45. The Connecticut Plaintiffs request damages in the amount to be determined at trial, including statutory and common law damages, attorneys' fees, and punitive damages.

## COUNT II

### VIOLATIONS OF ARIZONA CONSUMER FRAUD ACT, Ariz. Rev. Stat. §§ 44-1521, *et seq.*
**(On behalf of the Arizona Class)**

46. The Arizona Plaintiff identified above, individually and on behalf of the Arizona Class, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

47. Defendant is a "person" as defined by Ariz. Rev. Stat. § 44-1521(6).

48. Defendant advertised, offered, or sold goods or services in Arizona and engaged in trade or commerce directly or indirectly affecting the people of Arizona.

49. Defendant engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts affecting the people of Arizona in connection with the sale and advertisement of "merchandise" (as defined in Arizona Consumer Fraud Act, Ariz. Rev. Stat. § 44-1521(5)) in violation of Ariz. Rev. Stat. § 44-1522(A).

50. Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

51. As a direct and proximate result of Defendant's deceptive acts and practices, the Arizona Plaintiff and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, inclusive of not receiving the benefit of their bargain in purchasing the Products.

52. The Arizona Plaintiff and Class members seek all monetary and non-monetary relief allowed by law, including compensatory damages; disgorgement; punitive damages; injunctive relief; and reasonable attorneys' fees and costs.

## COUNT III

### VIOLATIONS OF COLORADO CONSUMER PROTECTION ACT, Colo. Rev. Stat. §§ 6-1-101, *et seq.* (On behalf of the Colorado Class)

53. The Colorado Plaintiff identified above, individually and on behalf of the Colorado Class, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

54. Defendant is a "person" as defined by Colo. Rev. Stat. § 6-1-102(6).

55. Defendant engaged in "sales" as defined by Colo. Rev. Stat. § 6-1-102(10).

56. The Colorado Plaintiff and Class members, as well as the general public, are actual or potential consumers of the products and services offered by Defendant or their successors in interest to actual consumers.

57. Defendant engaged in deceptive trade practices in the course of their business, in violation of Colo. Rev. Stat. § 6-1-105(1)(g), by, among other things, representing that the Products are of a particular standard, quality, or grade, while they knew or should know that they are of another.

58. Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

59. As a direct and proximate result of Defendant's deceptive trade practices, the Colorado Plaintiff and Class members suffered injuries to their legally protected interests.

60. Defendant's deceptive trade practices significantly impact the public, because Defendant is one of the largest baby food manufacturers in the country.

61. The Colorado Plaintiff and Class members seek all monetary and non-monetary relief allowed by law, including the greater of: (a) actual damages, or (b) $500, or (c) three times actual damages (for Defendant's bad faith conduct); injunctive relief; and reasonable attorneys' fees and costs.

## COUNT IV

### VIOLATIONS OF TEXAS DECEPTIVE TRADE PRACTICES—CONSUMER PROTECTION ACT, Tex. Bus. & Com. Code Ann. §§ 17.41, *et seq.*
(On behalf of the Texas Class)

62. The Texas Plaintiff identified above, individually and on behalf of the Texas Class, repeats and realleges all previously alleged paragraphs, as if fully alleged herein.

63. Defendant is a "person," as defined by Tex. Bus. & Com. Code Ann. § 17.45(3).

64. The Texas Plaintiff and the Class members are "consumers," as defined by Tex. Bus. & Com. Code Ann. § 17.45(4).

65. Defendant advertised, offered, or sold goods or services in Texas and engaged in trade or commerce directly or indirectly affecting the people of Texas, as defined by Tex. Bus. & Com. Code Ann. § 17.45(6).

66. Defendant engaged in false, misleading, or deceptive acts and practices, in violation of Tex. Bus. & Com. Code Ann. § 17.46(b) by representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have; representing that goods or services are of a particular standard, quality or grade, if they are of another; and advertising goods or services with intent not to sell them as advertised.

67. Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

68. Defendant engaged in unconscionable actions or courses of conduct, in violation of Tex. Bus. & Com. Code Ann. § 17.50(a)(3). Defendant engaged in acts or practices which, to consumers' detriment, took advantage of consumers' lack of knowledge, ability, experience, or capacity to a grossly unfair degree.

69. Consumers, including the Texas Plaintiff and Class members, lacked knowledge about the above business practices, omissions, and misrepresentations because this information was known exclusively by Defendant.

70. As a direct and proximate result of Defendant's deceptive acts and practices, the Texas Plaintiff and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Products.

71. Defendant's violations present a continuing risk to the Texas Plaintiff and Class members as well as to the general public.

72. Defendant received notice pursuant to Tex. Bus. & Com. Code Ann. § 17.505 concerning its wrongful conduct as alleged herein by the Texas Plaintiff and Class members. The Texas Plaintiff and Class members seek all monetary and non-monetary relief allowed by law, including economic damages, damages for mental anguish, treble damages for each act committed intentionally or knowingly, court costs, reasonably and necessary attorneys' fees, injunctive relief, and any other relief which the court deems proper.

## COUNT V

### UNJUST ENRICHMENT
### (On Behalf of the National Class, or Alternatively, the Connecticut, Arizona, Colorado, and/or Texas Subclasses)

73. All Plaintiffs identified above, individually and on behalf of the Nationwide Class, or alternatively, the Connecticut, Arizona, Colorado, and/or Texas Subclasses repeat and reallege all previously alleged paragraphs, as if fully alleged herein.

74. Plaintiffs and putative Class Members conferred a benefit on Defendant when they purchased the Products, of which Defendant had knowledge. By its wrongful acts and omissions described herein, including selling the Products, which contain heavy metals, including arsenic, cadmium, and lead at levels above what is considered safe for babies and did not otherwise perform as represented and for the particular purpose for which they were intended, Defendant was unjustly enriched at the expense of Plaintiffs and putative Class Members. Plaintiffs' detriment and Defendant's enrichment were related to and flowed from the wrongful conduct challenged in this Complaint.

75. Defendant has profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiffs and putative Class Members under circumstances in which it would be unjust for Defendant to be permitted to retain the benefit. It would be inequitable for Defendant to retain the profits, benefits, and other compensation obtained from its wrongful conduct as described herein in connection with selling the Products.

76. Defendant has been unjustly enriched in retaining the revenues derived from Class Members' purchases of the Products, which retention of such revenues under these circumstances is unjust and inequitable because Defendant manufactured defective Products, and misrepresented the nature of the Products, misrepresented their ingredients, and knowingly marketed and promoted dangerous and defective Products, which caused injuries to Plaintiffs and the Class because they would not have purchased the Products based on the same representations if the true facts concerning the Products had been known.

77. Plaintiffs and putative Class Members have been damaged as a direct and proximate result of Defendant's unjust enrichment because they would not have purchased the Products on the same terms or for the same price had they known the true nature of the Products and the misstatements regarding what the Products were and what they contained.

78. Defendant either knew or should have known that payments rendered by Plaintiffs and putative Class Members were given and received with the expectation that the Products were from "the world's most trusted name in baby food." as represented by Defendant in advertising, on Defendant's websites, and on the Products' labels and packaging. It is inequitable for Defendant to retain the benefit of payments under these circumstances.

79. Plaintiffs and putative Class Members are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant.

80. When required, Plaintiffs and putative Class Members are in privity with Defendant because Defendant's sale of the Products was either direct or through authorized sellers. Purchase through authorized sellers is sufficient to create such privity because such authorized sellers are Defendant's agents for the purpose of the sale of the Products.

81. As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiffs and putative Class Members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant for its inequitable and unlawful conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the other members of the Classes proposed in this Complaint, respectfully requests that the Court enter judgment as follows:

A. Declaring that this action is a proper class action, certifying the Classes as requested herein, designating Plaintiffs as Class Representatives, and appointing the undersigned counsel as Class Counsel for the Classes;

B. Ordering Defendant to pay actual damages to Plaintiffs and the other members of the Classes;

C. Ordering Defendant to pay restitution to Plaintiffs and the other members of the Classes;

D. Ordering Defendant to pay punitive damages, as allowable by law, to Plaintiffs and the other members of the Classes;

E. Ordering Defendant to pay statutory damages, as provided by the applicable state consumer protection statutes invoked herein, to Plaintiff and the other members of the Classes;

F.  Ordering Defendant to pay reasonable attorneys' fees and litigation costs to Plaintiffs and the other members of the Classes, as allowable by law;

G.  Ordering Defendant to pay both pre- and post-judgment interest, as allowable by law, on any amounts awarded; and

H.  Ordering such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all claims in this Complaint so triable. Plaintiffs also respectfully request leave to amend this Complaint to conform to the evidence, if such amendment is needed for trial.

Dated:  February 5, 2021

Respectfully submitted,

*/s/ Jonathan Shub*
Jonathan Shub
Kevin Laukaitis*
**SHUB LAW FIRM LLC**
134 Kings Highway E., 2nd Floor
Haddonfield, NJ 08033
Tel: (856) 772-7200
Fax: (856) 210-9088
jshub@shublawyers.com
klaukaitis@shublawyers.com

Gary E. Mason*
Danielle Perry*
**MASON LIETZ & KLINGER, LLP**
5101 Wisconsin Avenue NW, Suite 305
Washington, DC 20016
Tel: 202-640-1168
Fax: 202-429-2294
gmason@masonllp.com
dlietz@masonllp.com

Gary M. Klinger*
**MASON LIETZ & KLINGER, LLP**
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
Tel: 202-640-1168

Fax: 202-429-2294
gklinger@masonllp.com

Charles E. Schaffer*
**LEVIN, SEDRAN & BERMAN, LLP**
510 Walnut Street, Suite 500
Philadelphia, Pennsylvania 191060
Tel: 215-592-1500
Fax: 215-592-4663
cschaffer@lfsblaw.com

*pro hac vice to be filed*

*Attorneys for the Plaintiffs and the Putative Classes*